McANALLEN v. EMPLOYMENT SECURITY COMMISSION

1. UNEMPLOYMENT COMPENSATION—STRIKE.

Flight personnel of airline whose ground personnel had struck and caused layoff of claimants were entitled to unemployment compensation benefits.

2. UNEMPLOYMENT COMPENSATION—LABOR DISPUTE.

A person is disqualified for unemployment compensation benefits if his unemployment is due to a labor dispute (1) in the "establishment" in which he is or was last employed or (2) in any other "establishment" operated by the same employing unit functionally integrated with the establishment in which he is employed.

3. UNEMPLOYMENT COMPENSATION—ESTABLISHMENT—EMPLOYMENT SECURITY ACT.

The determination of whether a unit of employment is a separate "establishment" within the meaning of the disqualifying provision of the Employment Security Act must be based upon all the facts relating to the relationship of the employee to the unit of employment, rather than on a determination of whether an entire enterprise or industry is highly integrated as to operating units or unified for the purpose of efficient management or production (MCLA § 421-.29).

REFERENCES FOR POINTS IN HEADNOTES

[1–4, 6–8] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds § 36.
Construction and application of provisions of unemployment compensation or social security acts regarding disqualifications for benefits because of labor disputes or strikes.  28 ALR2d 287.
[5] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds § 32.
[9] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds § 49.
[10] 2 Am Jur 2d, Administrative Law §§ 241 et seq., 654–656.

4. UNEMPLOYMENT COMPENSATION—ESTABLISHMENT—DOMICILE.

Question whether separate groups of employees are in the same establishment is to be determined "from the standpoint of the worker's employment," and from that standpoint his domicile is inconsequent.

5. UNEMPLOYMENT COMPENSATION — UNEMPLOYMENT TAXES — EMPLOYER.

An employer's obligation to pay Michigan unemployment taxes is not dependent on whether he operates one, or more or, indeed, any establishments in Michigan or whether his employees are Michigan domiciliaries.

6. UNEMPLOYMENT COMPENSATION—TAXES—ESTABLISHMENT.

Payment of taxes to Michigan and Michigan domicile are not significant factors to be counted in deciding whether particular groups of employees work in the same establishment.

7. UNEMPLOYMENT COMPENSATION—FLIGHT PERSONNEL.

Flight personnel perform their services at all points along the route of travel, while the ground personnel are "localized" at one fixed point; therefore, the flight personnel constitute a work force separate and apart, physically and functionally, from the ground personnel employed at the airport.

8. UNEMPLOYMENT COMPENSATION—ESTABLISHMENT.

Flight personnel, who perform their services in an airplane, were not employed in the airport or establishment where striking ground personnel were employed.

9. APPEAL AND ERROR—UNEMPLOYMENT COMPENSATION—FINDINGS OF FACT.

The Court of Appeals is bound to accept findings of fact made by the Unemployment Compensation Appeal Board if they are supported by the great weight of the evidence (MCLA § 421-.38).

CONCURRENCE BY

J. H. GILLIS, J.

10. ADMINISTRATIVE LAW—CONCLUSIONS OF LAW—APPEAL AND ERROR.

*Courts are not bound by an administrative agency's conclusions of law, but should give them special consideration in the light of the agency's peculiar expertise in its subject.*

Appeal from Ingham, Donald L. Reisig, J.  Submitted Division 2 February 6, 1970, at Detroit. (Docket No. 7,308.)  Decided September 30, 1970.

Carole J. McAnallen and others applied to Employment Security Commission for unemployment compensation benefits.  Application denied.  Referee affirmed and his findings were adopted verbatim by the Employment Security Appeal Board.  Plaintiffs appeal to Ingham circuit court.  Affirmed.  Plaintiffs appeal.  Reversed.

*Judith Bleich Kahn,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *E. J. Setlock,* Assistant Attorney General, for Employment Security Commission.

Before: LEVIN, P. J., and J. H. GILLIS and BRONSON, JJ.

LEVIN, J.  The plaintiffs are stewardesses and pilots of United Air Lines.  They were laid off for a month in July-August, 1966, because of a nationwide strike of the ground personnel of the airline.

The issue is whether the plaintiffs, who were not on strike, are precluded from receiving unemployment compensation because of the labor dispute disqualification provision of the Michigan Employment Security Act.[1]

The employment security commission denied claims filed by the plaintiffs and other laid-off employees.  This administrative decision was affirmed by a referee and his findings and conclusions were

---

[1] § 29(8), MCLA § 421.29(8) (Stat Ann 1968 Rev § 17.531[8]).

adopted verbatim by the Employment Security Appeal Board.

Some of the unsuccessful claimants appealed to the Wayne Circuit Court which reversed the appeal board; that decision was not appealed. The plaintiffs, who were not residents of Wayne County, appealed to the Ingham Circuit Court which affirmed the appeal board. From that decision they appeal to this Court. We reverse.

An individual is disqualified for benefits if his unemployment is due to a labor dispute (1) in the "establishment" in which he is or was last employed or (2) in any other "establishment" operated by the same employing unit functionally integrated with the establishment in which he is employed. The parties are in agreement that we need not concern ourselves with the second clause, only the first, because the second applies only where the employee in the nondispute establishment, functionally integrated with the dispute establishment, is "directly involved" in the labor dispute within the meaning of statutory provisions which, on the facts of this case, the appeal board found to be inapplicable.[2]

---

[2] Under clause (a) IV of the "directly involved" definition (see footnote 1 for citation of statute) all employees employed in the dispute establishment are automatically deemed to be "directly involved". See *Graham* v. *Fred Sanders Company* (1968), 11 Mich App 361, 374.

Where disqualification is predicated upon employment in a non-dispute establishment which is functionally integrated with the dispute establishment it must be shown that the employee in the nondispute establishment is "directly involved" because either he voluntarily stopped work (clauses [a] I and [a] III) or because he is "participating in or financing or directly interested in the labor dispute" (clause [a] II); "directly interested" means a reasonable expectation that the outcome of the strike will affect the employee's wages, hours or other conditions of employment (clause [b]). We note that in this case there was no practice that the substantive terms of the collective bargaining agreements of flight personnel would be modeled or be dependent upon those of the striking ground employees.

The disqualification of the plaintiff flight personnel was based on a finding that they and the striking ground personnel were all employed in the same establishment.

United Air Lines is a nationwide air carrier, with principal offices in Chicago, Illinois and with a regional office in Pittsburgh, Pennsylvania. Its operations in Michigan are stationed at several airports, including Detroit Metropolitan Airport.

On July 8, 1966, there was a nationwide strike of United Air Lines mechanics, utility men, fuelers, ramp service men, food handlers, and kitchen helpers. The strike was over wages, benefits, working conditions and rules.

The striking ground personnel were employed under a collective bargaining agreement negotiated by their union, the International Association of Machinists and Aerospace Workers. The plaintiff flight personnel were employed under a separate agreement negotiated by their union, the Air Line Pilots Association. The plaintiffs did not participate in or stand to benefit from the strike of ground personnel. Working contracts with employees and seniority are on a system-wide basis.

The plaintiff stewardesses and pilots did not work after July 8, but were not laid off until July 18. The lay-off continued until the strike was settled effective August 19.

The flight sequences on plaintiffs' work schedules began and ended in Michigan. Sometimes they worked on a three-corner trip which required them to stay overnight at two points. The plaintiffs were all domiciled in Michigan, with the exception of eleven plaintiffs who had been transferred to other areas before the strike. United Air Lines paid unemployment taxes to the State of Michigan for all the plaintiffs except that it stopped paying taxes

to Michigan for employees transferred out of state after the effective dates of transfer.

In *Northwest Airlines, Inc.,* v. *Employment Securities Commission* (1966), 378 Mich 119, the claimants were Michigan-based ground service employees of Northwest Airlines who were laid off from work as a result of a strike by flight engineers who were domiciled in Minneapolis and Seattle but who were attached to aircraft which flew from place to place throughout the airline system, including Michigan. The issue there, as here, was whether the claimants' unemployment was the result of a strike "in the establishment" where they were employed. It was held that the nonstriking ground personnel were not employed in the establishment of the striking flight personnel.

In the controlling opinion, the Court reviewed its opinion in *Park* v. *Employment Security Commission* (1959), 355 Mich 103, and said that opinion (p 129) "defined 'establishment' in terms of a distinct physical place of business, necessarily localized in character". The *Northwest* Court reiterated that the determination whether a unit of employment is a separate "establishment" within the meaning of the disqualifying provision "must be based *upon all the facts relating to the relationship of the employee to the unit of employment* [emphasis by the Court], rather than on a determination of whether an entire enterprise or industry is highly integrated as to operating units or unified for the purpose of efficient management or production". The Court stressed (p 133) "the *character* of the local workers' *employment* and the character of the *place* in which it was performed". (Emphasis supplied.)

Focusing on the facts at hand, the Court declared (p 130):

"The ground personnel are located at fixed terminals and offices, while the flight personnel perform their essential functions in connection with the actual flight of aircraft, although some flight personnel perform functions on the ground at various terminal points".

The Court further observed that the primary service of the flight engineers is rendered while the aircraft is in flight and that the flight engineers did not become employed at Detroit Metropolitan Airport within the meaning of the act (pp 133, 134):

"Nor do we perceive that because the flight engineers performed some part of their function on the ground in Detroit the character of the Detroit operation was thereby altered so as to place the labor dispute in the local establishment".

In this case it is the ground personnel who are on strike and the flight personnel who are claiming unemployment compensation benefits. The only other factual differences are that most of the plaintiff flight personnel were domiciled in Michigan,[3] while the flight personnel in *Northwest* were domiciled out of the state, and here employment taxes were paid for the flight personnel to Michigan, not some other state. We do not think these factual differences are significant.[4]

---

[3] Eleven of the plaintiffs had ceased to be Michigan domiciliaries before the strike. Yet the referee and appeal board held that they also were disqualified. This suggests that little weight was given to the Michigan domicile of the plantiffs in reaching the conclusion adopted by the appeal board.

[4] The appeal board adopted the referee's conclusion that the nonstriking flight personnel were disqualified because of the "localization of their employment in this State". Their employment was said to be "localized" in Michigan because their flights began and ended in Michigan, they were domiciled in Michigan, and contributions for unemployment compensation purposes were paid by United Air Lines to Michigan. The issue, however, is not whether the plaintiffs' employment was "localized" in Michigan but whether it was "localized" in the dispute establishment. The referee and the appeal board erred in injecting a false inquiry.

Whether separate groups of employees are in the same establishment is to be determined *"from the standpoint of the worker's employment"*. *Northwest, supra,* p 133. (Emphasis by the Court.) From the standpoint of a worker's *employment,* his domicile is inconsequent. The question to be decided concerns employment—where does the man work, not where does he sleep.

Almost all claims filed under the act are filed by employees domiciled in Michigan whose employers paid unemployment taxes to Michigan. The taxes in respect to the successful claimants in *Northwest* were paid to Michigan; no doubt most of them were Michigan domiciliaries.

An employer's obligation to pay Michigan unemployment taxes is not dependent on whether he operates one or more or, indeed, any establishments in Michigan or on whether his employees are Michigan domiciliaries.[5] Most employees in respect to whom taxes are required to be paid to Michigan are domiciled in this state. Payment of taxes to Michigan and Michigan domicile are not, therefore, significant factors to be counted in deciding whether particular groups of employees work in the same establishment, or for distinguishing this case from *Northwest*.

In *Graham* v. *Fred Sanders Company* (1968), 11 Mich App 361, the claimants were retail sales employees who worked in concessions operated by the Fred Sanders Company in various supermarkets

---

The referee's opinion, adopted by the appeal board, pointed out that *Northwest* was decided before the effectiveness of the amendments concerning two or more functionally integrated establishments which became effective in September, 1963 (PA 1963, No 226). This is a false basis of distinction because the amendments do not affect the question before us of whether the flight personnel and the ground personnel were employed in the same establishment. See *Graham* v. *Fred Sanders Company, supra,* p 373.

[5] MCLA § 421.42 (Stat Ann 1970 Cum Supp § 17.545).

in the metropolitan Detroit area. In holding that they were not employed in the establishment of the striking production employees, who worked at the factory, we said that the relationship of the retail sales employees and of the striking production employees to their units of employment was entirely different (p 372):

"One work force was engaged in production, another in sales. Perhaps most importantly, the aptitudes, skills, and labor required of, and working conditions affecting, one work force are entirely different from those in respect to the other".

Here, as in *Northwest,* the flight personnel performed their services at all points along the route of travel, while the work of the ground personnel was "localized" at one fixed point. Working conditions on the plane are entirely different than on the ground. The aptitudes, skill and labor required of the flight personnel are uniquely related to the "place"—the airplane—where they work. That place is entirely different from the place where the ground personnel work. The place where the flight personnel work, the airplane, is not part of the place, one of the airports, where the ground personnel work.

The flight personnel, who work in the airplane as it flies from one place to another, constitute a work force separate and apart, physically and functionally, from the ground personnel employed at the airport. Focusing on the character of the "worker's employment and the character of the place in which it was performed", viewing the matter "from the standpoint of the worker's employment" (*Northwest,* p 133), we conclude that the plaintiffs, who perform their services in an airplane, were not employed in the airport or the establishment where the striking ground personnel were employed.

We see no need to decide whether it is possible for employees to be "establishmentless" or to determine precisely in what establishment, if any, the nonstriking flight personnel were employed.[6] It is enough to say that in our opinion flight personnel are not employed at the airport from which the flight sequence originates and that the plaintiff flight personnel in this case were not employed in an establishment in which the striking ground personnel were employed.

We recognize that we are bound, under § 38 of the act (MCLA § 421.38 [Stat Ann 1968 Rev § 17.540]), to accept findings of fact made by the appeal board if they are supported by the great weight of the evidence. But here, as in *Graham* (p 370), "there was no dispute as to the underlying facts.[7] There were no inferences to draw, and the

---

[6] *Cf. Northwest Airlines, Inc., v. Employment Security Commission, supra; Graham v. Fred Sanders Company, supra.*

The drafters of the language added in 1963, disqualifying persons employed in functionally integrated establishments who are directly involved in the strike or its outcome, may have proceeded on the assumption that every employee works in an establishment. And, therefore, in order to effectuate the policy of the 1963 amendments, every "directly involved", functionally integrated nonstriking employee should, perhaps, be deemed to be employed in an establishment even though his work is not "localized". The language added in 1963 is not, however, pertinent in this case.

The pertinent clause disqualifies only those employees in the employing unit working in the dispute establishment; it is entirely possible that peripatetic employees may not be employed in any establishment in the sense that term was used in the pertinent clause as construed in *Park* and *Northwest*: "a distinct physical place of business, necessarily localized in character". (Northwest, p 129)

Our responsibility is to give effect to the legislative intent, not to come up with a perfectly symmetrical definition of the word "establishment" good for all cases. Where, as here, the issue is whether a nonstriking employee, not directly involved in the strike or its outcome, is employed in the establishment of the strikers, it is critical whether the nonstriker's employment is localized in the particular establishment which is on strike. It is of no importance in this case whether the nonstriking employee is employed in some other establishment of the employer or whether he is "establishmentless".

[7] In his brief the attorney general concedes that the facts are

referee drew none.   The disagreement concerns the
application and interpretation of the undisputed
facts in deciding what is 'the establishment' ".   In
*Northwest,* an independent evaluation was made of
the undisputed facts there presented in each of the
opinions filed.

Reversed and remanded for the entry of a judg-
ment consistent with this opinion.   Costs to plain-
tiffs.

All concurred.


J. H. Gillis, J. (*concurring*).   The appeal board
adopted the referee's findings that the claimants
were disqualified under the statute (MCLA § 421.29
[8][a] [Stat Ann 1968 Rev § 17.531(8)(a)]), they
being persons directly involved in a labor dispute
in the same establishment in which they were em-
ployed.   In disagreeing with this finding as a con-
clusion of law, I am compelled to reiterate the
caution first advocated in my dissenting opinion in
*Graham* v. *Fred Sanders Company* (1968), 11 Mich
App 361, at p 377, wherein I stated that the admin-
istrative agency's appeal board is the final fact-
finder under the statute and the courts are bound
to accept those factual findings and the permissible
inferences drawn therefrom.   In that same dissent,
I emphasized that there was, and believe that there
still is, respectable authority which urges, but does
not mandate, that courts adopt the conclusions of
law drawn by those administrative agencies in light
of their peculiar expertise with the subject.   *Cf.*
*Levinson* v. *Spector Motor Service* (1947), 330 US
649, 672 (67 S Ct 931, 943; 91 L Ed 1158, 1173).
But unlike the majority opinion in *Graham, supra,*
which failed to expressly delineate one employee

---

undisputed, adding that much of the evidentiary facts were sub-
mitted into the record by stipulation.

establishment from the other and thus denied us clear guidelines for future decisions, the opinion of my colleagues in this case does sufficiently distinguish the different work establishments as required by statute. Further, a review of *Northwest Airlines* v. *MESC* (1966), 378 Mich 119, dispositively supports that, as a matter of law, a like decision be rendered in this case. Therefore, I join my colleagues and concur in reversing and remanding for entry of judgment consistent with their opinion.